**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

**SECURITIES AND EXCHANGE COMMISSION,**   :
                                        :
                    **Applicant,**   :

- against -   :        **Case No. 14-mc-257**
                                          :

**JOSEPH D. STILWELL,**   :        **ECF CASE**
                                          :

                    **Respondent.**   :
-------------------------------------------------------------------x

### MEMORANDUM OF LAW IN OPPOSITION
### TO THE SECURITIES AND EXCHANGE COMMISSION'S
### APPLICATION FOR AN ORDER TO SHOW CAUSE AND
### FOR AN ORDER REQUIRING JOSEPH D. STILWELL'S
### COMPLIANCE WITH ITS SUBPOENA

Steven R. Glaser
Katie Rasor
SKADDEN, ARPS, SLATE, MEAGHER &
  FLOM LLP
Four Times Square
New York, NY 10036
(212) 735-3000
Steven.Glaser@skadden.com

Peter D. Hardy
(*Pro hac vice* admission pending)
POST &SCHELL, P.C.
Four Penn Center
1600 John F. Kennedy Blvd.
Philadelphia, PA 19103
(215) 587-1000
PHardy@postschell.com

August 25, 2014

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ....................................................................................4

    I.     The Respondent ....................................................................4

    II.    The SEC's Investigation ....................................................5

        A.    The Initial Investigative Subpoenas..............................5

        B.    Wells Notice and Submission ......................................6

        C.    SEC's Investigation Into Pre-2008 Loans....................8

        D.    The June 18, 2014 Subpoena ......................................9

        E.    Settlement Negotiations ...............................................9

        F.    Mr. Stilwell Does Not Appear for Testimony ..............9

ARGUMENT ........................................................................................................11

    I.     The SEC Fails to Carry Its Burden That the Subpoena Serves a Legitimate Investigative Purpose Because the SEC Has Made All of the Relevant Charging Decisions and Therefore the Investigation is Over. ...................11

    II.    The Subpoena Serves the Improper Purpose of Allowing the SEC to Circumvent the Discovery Rules that Apply in Administrative Proceedings and Obtain Evidence that Would Otherwise be Unavailable.................18

    III.   The SEC's Request For an In Camera Review of Evidence Should be Denied. ..................................................................................................21

CONCLUSION .....................................................................................................22

# TABLE OF AUTHORITIES

**CASES**                                                                           Page

Payden v. United States (In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985
    (Simels)),
    767 F.2d 26 (2d Cir. 1985)..............................................................................19

SEC v. Sears,
    No. 05-728-JE, 2005 U.S. Dist. LEXIS 44854 (D. Or. July 28, 2005) ...........................15

RNR Enterprises, Inc. v. SEC,
    122 F.3d 93 (2d Cir. 1997)...............................................................11, 19, 21

United States v. Alpha Medical Management, Inc.,
    No. 96-5825, 1997 U.S. App. LEXIS 16209 (6th Cir. June 26, 1997)...........................21

United States v. Frowein,
    727 F.2d 227 (2d Cir. 1984).............................................................................15

United States v. Powell,
    379 U.S. 48 (1964)..........................................................................................19

**STATUTES**

15 U.S.C. § 78u(a)(1).................................................................................11, 12

15 U.S.C. § 78u(c) ..........................................................................................11

19 U.S.C. § 1592.............................................................................................15

**REGULATIONS**

17 C.F.R. § 201.230(a).....................................................................................22

17 C.F.R. § 201.230(g) ...............................................................................4, 20

17 C.F.R. § 201.233(a)..................................................................................3, 20

17 C.F.R. § 201.233(b) ................................................................................3, 20

Joseph D. Stilwell respectfully submits this Memorandum of Law in opposition to the United States Securities and Exchange Commission's ("SEC" or the "Commission") Application dated August 13, 2014 for an Order to Show Cause and for an Order Requiring Joseph D. Stilwell's Compliance with its Subpoena.  Because the SEC has failed to carry its burden of demonstrating that its June 18, 2014, subpoena serves a legitimate investigative purpose, and for additional reasons discussed below, Mr. Stilwell respectfully requests that the Court deny the Commission's Application.

**<u>PRELIMINARY STATEMENT</u>**

The SEC's motion is premised on an attempt to refute arguments that Mr. Stilwell never advanced, and on omitting critical information necessary to the Court to rule on this motion.  It argues primarily that (1) Mr. Stilwell refuses to testify because he has "sour grapes" over the SEC's refusal to propose an acceptable resolution to its investigation of him; and (2) the SEC maintains jurisdiction to investigate because no final decision to charge has been reached.  Both are entirely inaccurate.

First, the "sour grapes" argument is nonsensical and a red herring.  It is quite typical for parties to fail to reach a mutually agreeable settlement, something that Mr. Stilwell fully understands.  In this case, the parties hold vastly different views of the evidence – Mr. Stilwell committed no fraud, nor would he have ever agreed to the sanctions proposed by the SEC; they likely would have resulted in significant harm to Mr. Stilwell's investors, in a case involving neither harm to investors nor personal gain to Mr. Stilwell from the conduct at issue.

Rather, what the SEC omits entirely from its moving papers is that, in a moment of candor after the settlement discussions concluded, it made several firm representations on July 23, 2014 that made clear that no investigative purpose would be served by its Subpoena.  It (1) stated unequivocally that it had decided to charge Mr. Stilwell; (2) cited the specific statutory provisions it would allege were violated; (3) reiterated that its theory of prosecution would be the same as it had previously explained to counsel; (4) indicated that it was proceeding administratively rather than via federal court action; (5) indicated with relative precision the timing of the issuance of the Order Instituting Proceedings ("OIP"); and (6) asked whether counsel for Mr. Stilwell would accept service of process of the OIP.  Given these representations, it is difficult to fathom how Mr. Stilwell's testimony possibly could change the conclusions the SEC has already drawn.  Under these circumstances, when the SEC already has made all of the relevant charging decisions, the investigation is complete and therefore further testimony from Mr. Stilwell can serve no legitimate investigative purpose.  This position was fully explained to the SEC in a letter dated August 4, 2014, yet nowhere does the SEC address it.  It instead makes a series of disingenuous arguments that its investigation is not yet complete, such as citing to its Wells notice issued almost a year ago – before most of its investigation took place and well before the July 23, 2014 conversation – for the proposition that no final conclusions have been reached.

Given that the SEC already has declared the charges that it intends to bring, its insistence that Mr. Stilwell's further testimony is relevant to its investigation into inter-fund loans extended prior to 2008 is entirely pre-textual.  During his full day of testimony, Mr. Stilwell indicated that the loans he was questioned about were executed to the benefit of investors, and explained at length why this was so; he certainly did not testify consistent with the SEC's theory that he had

fraudulent intent.[1]  The SEC obviously did not credit that testimony.  It is abundantly clear that

the SEC will place no credence in what will be similar testimony relating to the pre-2008 loans –

a fact supported by the SEC having revealed that it has already decided to charge, and to charge

fraud.

Moreover, as we will make plain below, the SEC's attempt to argue that Mr. Stilwell

obfuscated about the existence of certain facts during his July 2, 2013 testimony, which

purportedly provides a basis to enforce the Subpoena, is equally frivolous.  The SEC never asked

questions about the pre-2008 loans during Mr. Stilwell's July 2, 2013 testimony.  Poor

questioning is not the fault of Mr. Stilwell, and it does not entitle the SEC to a "do-over," either

as to this topic or as to any other.

Ironically, the SEC accuses Mr. Stilwell of "gamesmanship."  (SEC's Mem. at 17.)  The

only gamesmanship here, though, is by the SEC.  It has concluded its investigation with respect

to Mr. Stilwell.  And by choosing an administrative forum to litigate this matter, it is well aware

that the Federal Rules of Civil Procedure will not apply and that depositions are generally not

permitted under the Commission's Rules of Practice.  See 17 C.F.R. § 201.233(a), (b).  The SEC

therefore wishes to take Mr. Stilwell's so-called investigative testimony at the eleventh hour to

circumvent the limited discovery rules of its chosen forum.  This is particularly inequitable

because during investigative testimony, as opposed to a deposition, defense counsel may not

object and has very limited ability to pose its own questions.  The SEC further reveals its

gamesmanship by hiding behind the fact that its staff purportedly has not made a formal – albeit

---

[1]      In sum, Mr. Stilwell explained that the borrowing fund needed liquidity to stave off a margin call, which would
have locked in losses for investors and decreased the chances that he would have sufficient time to turn around
an investment in a foundering company.  (Glaser Decl. ¶ 14, Ex. A at 77, 85-86.)  The fund that provided the
loan was as fully invested as Mr. Stilwell desired (id., Ex. A at 91, 187-88), and was able to borrow on margin
at a rate below 1%; at the same time, it received 6% in return.  In short, the loans were in the best interests of all
investors.

pro forma – recommendation to the Commission to charge yet.[2]  By delaying its recommendation until just after Mr. Stilwell testifies, it avoids having to meet a more exacting legal standard that would apply to investigative subpoenas once the administrative proceeding has been initiated.  The Rules of Practice specifically prohibit subpoenas issued "for the purpose of obtaining evidence relevant to the proceedings."  17 C.F.R. § 201.230(g).  Indeed, there is no assurance that the SEC will not try to completely revisit all of the many questions and topics that it previously covered during Mr. Stilwell's exhaustive testimony in July 2013.  The SEC's desire to rehash old ground and clean-up a testimonial record of its own making hardly qualifies as a legitimate investigative purpose.

The SEC's motion should be denied.


## STATEMENT OF FACTS

### I.   The Respondent

Mr. Stilwell is the principal owner and managing member of Stilwell Value LLC ("Stilwell Value").  (Glaser Decl. ¶ 5, SEC's Ex. 2.)  Stilwell Value serves as the general partner and investment adviser to the Stilwell Funds, which are a series of limited partnerships (the "Stilwell Funds").  (Id.)  The SEC has been investigating whether Mr. Stilwell and Stilwell Value (collectively "Stilwell") committed securities fraud by improperly or incompletely disclosing certain inter-fund loans between various funds that Stilwell managed.  (Id. ¶ 6.)

---

[2]   That this distinction is meaningless is underscored by this action, which the SEC is prosecuting through its "staff."

**II.     The SEC's Investigation**

On November 27, 2012, the SEC commenced its investigation into Mr. Stilwell and

Stilwell Value.  (Id. ¶ 7, SEC's Ex. 3.)  Between November 2012 and June 2014, Mr. Stilwell

fully cooperated with the SEC's investigation, including complying with seven subpoenas it

served upon him and Stilwell requesting the production of documents, in addition to sitting for a

full day of testimony.  (Id. ¶ 8, SEC's Ex. 8.)  We understand that the SEC has also served

several additional subpoenas *duces tecum* and *ad testificandum* on numerous third parties.

**A.     The Initial Investigative Subpoenas**

On December 18, 2012, the SEC served a subpoena on Stilwell Value, calling for

documents relating to inter-fund loans made during the "Relevant Time Period."  (Id. ¶ 9, SEC's

Ex. 6.)  It specifically defined "Relevant Time Period" to mean "November 1, 2008 to the

present."  Subpoena Request 5 called for "[a] schedule of all loan transactions and borrowing

arrangements each Stilwell Fund participated in during the Relevant Time Period."  (Id.)

Stilwell Value produced responsive documents on February 15, 2013, including a document

entitled "Stilwell Funds Intercompany Loans November 2008 to December 2012" that contained

a schedule of six inter-fund loans made during the subpoena period (the "February 2013 Loan

Schedule").  (Id., SEC's Ex. 7 at 3-4.)

On May 31, 2013, the SEC issued a subpoena for Mr. Stilwell's testimony.  (Id. ¶ 10,

SEC's Ex. 8.)  Mr. Stilwell complied with that subpoena and appeared for testimony on July 2,

2013.  (Id.)  He sat for a full day of testimony from 10:19 AM to 5:02 PM and answered the

SEC's questions about a series of inter-fund loans made during the subpoena period.  (Id. ¶¶ 9-

13, SEC's Ex. 1 at 75-76.)  The SEC showed Mr. Stilwell the February 2013 Loan Schedule and

asked him, "What is it?"  (Id.)  Mr. Stilwell testified in response, "I believe this is a summary of

all of the loans, interfund loans…from the beginning of our time through the present." (Id.)  The SEC now reads "our time" to mean from the beginning of Stilwell's inception, rather than the time period as defined by the SEC's own December 18, 2012 subpoena and encapsulated in the February 2013 Loan Schedule produced in response thereto.  Indeed, when this exchange is read in context, it is clear that the SEC is trying to manufacture a basis for further testimony where none exists.  (Id., SEC's Ex. 1 at 171.)

The SEC also asked Mr. Stilwell whether he made any "transfers" between the Stilwell Funds:

> Q. Did you ever from time to time transfer funds between – transfer money between the accounts of the different funds, even for a short period of time?
>
> A. Not that I recall.  I mean, I just don't see what the point would be even.

(Id. ¶ 12.)

The SEC did not ask Mr. Stilwell if he made any loans between the Stilwell Funds; the scope of its question was specifically limited to inter-fund transfers. (Id.)

Mr. Stilwell also testified that he put his investors' interests first, (id. ¶ 14, Ex. A at 82-83), and never had the intent to hide a potential conflict of interest from his investors.  (Id., Ex. A at 199-200, 208.)

## B.     Wells Notice and Submission

On October 23, 2013, the SEC issued a Wells notice indicating that it had reached a preliminary conclusion that Mr. Stilwell and Stilwell Value had violated the federal securities

laws.  (<u>Id.</u> ¶ 15, SEC's Ex. 10.)[3]  To our knowledge, the only investigation undertaken by the SEC at that time was a review of the material produced by Mr. Stilwell, his accounting firm, and Mr. Stilwell's testimony.  (<u>Id.</u>)  We are aware of no other investigatory steps having been taken. (<u>Id.</u>)

The SEC's primary theory of liability was – and indeed still is – that Mr. Stilwell and Stilwell Value violated the Investment Advisers Act Sections 206(1), 206(2), 206(4), 207 and Rules 206(4)-7 and 206(4)-8 thereunder, by executing certain inter-fund loans in 2008 and 2009 and failing to disclose them because they were conflict of interest transactions.  (<u>Id.</u> ¶ 15, SEC's Ex. 10.)  The SEC took the position that Mr. Stilwell was not only negligent, but committed an intentional fraud by failing to disclose the loans more fully than they were disclosed.  (<u>Id.</u>)

Mr. Stilwell provided a written submission in response setting forth the reasons why such charges would be inappropriate and unwarranted and why the SEC's fraud theory is plainly contradicted by the evidence:

- There was no intent to defraud, as evidenced by the fact that the principal loans at issue were fully disclosed in the audited financials of the relevant funds, which were available to investors.
- There was no attempt to conceal the loans.  Stilwell Value's external accountants, lawyers, and auditors were aware of the loans but did not advise Mr. Stilwell that they should be disclosed any further.
- The loans were authorized by the limited partnership agreements and no investors complained about them once they were fully disclosed in a January 2013 investor letter.

---

[3]   A second Wells notice was issued on April 3, 2014, which simply added the possibility of charges pursuant Rule 10b-5.  (Glaser Decl. ¶ 17, SEC's Ex. 11.)  Mr. Stilwell found this second Wells notice puzzling because the SEC had already indicated in its first Wells notice that it was pursuing fraud-based charges under the Investment Advisers Act (Rule 206(1)).  We received no explanation for the need or thought behind the issuance of the second Wells notice. (<u>Id.</u>)  In any event, we were not offered an opportunity to respond, nor were we afforded a Wells call in which the SEC typically explains the basis for its charging recommendation. Not until our settlement meetings in July did the SEC fully flesh out its theory of prosecution.  Accordingly, throughout this Memorandum of Law, when we refer to the "Wells notice" we are referring to the initial Wells from October 23, 2013; the second Wells notice appears to have been gratuitous.

- No investors suffered pecuniary harm because of the loans; the investors in the lender funds were repaid in full with interest.

(Id. ¶ 16.)

## C.     SEC's Investigation Into Pre-2008 Loans

To the best of our knowledge, only after receiving Mr. Stilwell's written submission did the SEC take any testimony or seek any documents from third parties beyond Mr. Stilwell's accounting firm; it also sought additional materials from Mr. Stilwell.  (Id. ¶¶ 18-19, SEC's Ex. 12.)  It appears that all of this post-Wells submission activity was an effort by the SEC to shore-up the conclusions it had already reached and to rebut Mr. Stilwell's strong defense of his conduct rather than to ascertain the truth.

On April 15, 2014, the SEC served an additional subpoena on Stilwell Value, calling for documents relating to inter-fund or related-party loans or transfers made between January 1, 2000 and the present.  (Id. ¶ 19, SEC's Ex. 12.)  In order to respond fully and accurately to the subpoena, Mr. Stilwell authorized counsel to hire, at significant time and expense, a forensic accountant to review all of the Stilwell Funds' books and records going back as far as such material still exists to provide the SEC a detailed schedule of all potential loan activity (as defined in the April 15 subpoena) along with supporting documentation.  On June 5, 2014, Stilwell produced to the SEC a document entitled "Stilwell Entities Schedule of Potential Loan Activity."  (Id. ¶ 20, SEC's Ex. 13 at 2.)[4]  Mr. Stilwell further authorized the forensic accountant

---

[4]     The SEC suggests because the schedule provided was entitled "Potential Loan Activity," it needs to investigate further to determine whether other loans exist.  As the SEC well knows – it was fully explained during a two-hour meeting with Mr. Stilwell's forensic accountant – the word "potential" was used on this schedule only because certain items on the schedule are not normally considered "loans," but, because these items fell within the subpoena's broad definition of the term loan, the items had to be included.

to meet with the SEC on July 1, 2014; during the course of a two-hour long meeting, he walked the SEC through his findings on a transaction by transaction basis.  (Id. ¶ 21.)

### D.    The June 18, 2014 Subpoena

On June 18, 2014, the SEC issued the Subpoena calling for further testimony from Mr. Stilwell.  (Id. ¶ 22, SEC's Ex. 4.)  At the SEC's request, and prior to the SEC announcing its charging decisions, the testimony was rescheduled to August 6, 2014 (Id., Ex. B.)

### E.    Settlement Negotiations

In July 2014, counsel for Mr. Stilwell entered into good faith settlement negotiations with the SEC.  (Id. ¶ 23.)  After two meetings, the SEC informed counsel the terms upon which it was willing to settle.[5]  (Id. ¶¶ 25-26.)  Those terms were not acceptable to Mr. Stilwell, given the potentially ruinous effect it would have on his investors; accordingly, settlement discussions ceased.  (Id. ¶ 26.)

### F.    Mr. Stilwell Does Not Appear for Testimony

On July 23, 2014, at the time that the SEC made its settlement position clear, which Mr. Stilwell rejected, the SEC further informed counsel for Mr. Stilwell that it intended to institute formal proceedings against Mr. Stilwell.  (Id. ¶ 27.)  The SEC set forth the charges it would bring, specified that it had selected a forum – specifically, an administrative proceeding – and indicated that it would file an Order Instituting Proceedings in mid-August 2014, shortly after Mr. Stilwell's second day of testimony.  (Id.)  The SEC also asked whether counsel would accept

---

[5]    The SEC asserts that it informed counsel at the first meeting that it was going to continue its investigation regardless of what happened during the settlement discussions.  (Id. ¶ 24.)  This is simply untrue.  The SEC threatened to continue its investigation only if Mr. Stilwell did not agree to settle.  (Id.)  Indeed, the fact that it was the SEC that requested the adjournment of Mr. Stilwell's testimony undercuts its assertion.  (Id. ¶ 22.)  In any case, Mr. Stilwell accepted the SEC's assertion for what it was – an idle threat.  It was quite clear that the SEC's investigation had concluded.

service of the OIP.  (Id.)  The SEC omits entirely any reference to these representations in its moving papers.

On August 4, 2014, counsel for Mr. Stilwell notified the SEC by letter that Mr. Stilwell would not appear for testimony scheduled on August 6, 2014 pursuant to the Subpoena.  (Id. ¶ 28, SEC's Ex. 14.)  Counsel explained what is evident – that the Subpoena is no longer valid because "[g]iven the current posture of this matter, we believe that Mr. Stilwell's testimony would serve no investigative purpose, but rather is a discovery tool for use in litigation…."  (Id.)  The letter further explained that "the staff was quite clear that it intended to file charges against Mr. Stilwell," and that where, as here, "all of the relevant charging decisions have been made," further testimony cannot serve any legitimate investigative purpose.  (Id.)

On August 5, 2014, the SEC informed counsel by telephone that it was disappointed by Mr. Stilwell's refusal to appear for testimony and further explained that in light of the "extensive process" it had afforded Mr. Stilwell in this matter, it believed that, as an "equitable" matter, Mr. Stilwell should appear for testimony.  (Id. ¶ 29.)  Counsel reiterated that Mr. Stilwell would not appear for testimony because based on the SEC's own representations, the investigation is over and therefore the Subpoena is no longer valid.  (Id.)  Turning to the "equitable" argument claimed by the SEC, counsel explained that because Mr. Stilwell now has been compelled to take a litigation posture in the wake of the breakdown of negotiations and the declaration by the SEC of its intended charges, the SEC's request that he sit voluntarily for testimony as an "equitable" matter was unpersuasive.  (Id.)

Following this call, the SEC sent counsel an email stating in part "you expressed the position that Mr. Stilwell need not comply with that subpoena because settlement negotiations have 'broken down' and you are, thus, 'litigating.'"  (Id. ¶ 30, SEC's Ex. 15 at 2.)  Again, this

assertion was entirely untrue.  Accordingly, counsel responded that it has never indicated that

Mr. Stilwell need not comply with the Subpoena "because" settlement negotiations broke down,

and that the basis for our position that the Subpoena is invalid was set forth in our August 4

letter.  (Id., SEC's Ex. 15 at 1.)  Counsel confirmed that Mr. Stilwell would not appear for

testimony.  (Id.)

   Mr. Stilwell did not appear for testimony pursuant to the Subpoena.  (Id. ¶ 31.)

## ARGUMENT

I.   **The SEC Fails to Carry Its Burden That the Subpoena Serves a Legitimate Investigative Purpose Because the SEC Has Made All of the Relevant Charging Decisions and Therefore the Investigation is Over.**

   The SEC's subpoena power is only to be used for a legitimate investigative purpose.  15

U.S.C. § 78u(a)(1) ("The Commission may, in its discretion, make such investigations as it

deems necessary to determine whether any person has violated . . . any provision of th[e]

chapter . . . .").  To establish that an administrative subpoena is prima facie valid and thereby

entitled to judicial enforcement under 15 U.S.C. § 78u(c), the SEC "must show [1] that the

investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be

relevant to the purpose, [3] that the information sought is not already within the Commissioner's

possession, and [4] that the administrative steps required…have been followed."  RNR Enters.,

Inc. v. SEC, 122 F.3d 93, 96-97 (2d Cir. 1997) (quoting United States v. Powell, 379 U.S. 48,

57-58 (1964)).  The SEC's own Enforcement Manual specifies that the Division may continue to

investigate and issue investigative subpoenas while simultaneously litigating a related civil

action only if there is "an independent, good-faith basis for the continued investigation," and

further defines this independent, good faith basis to include "the possible involvement of

additional persons or entities in the violations alleged in the complaint, or additional potential

11

violations by one or more of the defendants in the litigation."  Securities and Exchange Commission Division of Enforcement, Enforcement Manual 38 (Oct. 9, 2013).

The Subpoena is invalid because the SEC cannot demonstrate that the investigation continues to serve a "legitimate purpose."  The SEC claims that the investigation is being conducted "to determine whether any violations of the antifraud and other provisions of the securities laws have occurred."  (SEC's Mem. at 10.)  But the SEC divested itself of its jurisdiction to investigate potential violations of the securities laws under 15 U.S.C. § 78u(a)(1) when the SEC informed counsel on July 23, 2014 of its intent to file charges against Mr. Stilwell. (Glaser Decl. ¶ 27.)  Not only did the SEC candidly indicate that it had made a decision to charge, it also:

- Stated that it would bring charges under the Investment Advisers Act Sections 206(1), 206(2), 206(4), 207 and Rules 206(4)-7 and 206(4)-8 thereunder;

- Indicated that its theory of its case would be consistent with the lengthy and detailed presentation made to defense counsel during a prior settlement meeting;

- Notified counsel of the forum for its action, namely, that it would initiate an administrative proceeding;

- Noted that such proceedings would begin in approximately mid-August 2014, shortly after Mr. Stilwell's second day of testimony; and

- Asked whether counsel would accept service of the OIP on behalf of Mr. Stilwell (which counsel said it would).

In light of the SEC's July 23 communications, reflecting that the SEC has made all of the relevant charging decisions, the investigation is complete and therefore further testimony from Mr. Stilwell can serve no legitimate investigative purpose.

The SEC makes no mention whatsoever of this conversation, and instead seeks to misdirect the Court's attention to its Wells notice that it issued in October 2013, in which the

SEC did notify, at that time, that it was contemplating recommending that charges be brought against Mr. Stilwell.  (See SEC's Mem. at 13-14, 17.)  The Wells notice, however, is an irrelevancy.  The representations discussed above were made long-after, and there was absolutely nothing conditional about what the SEC indicated: it was moving ahead with charges.  The SEC also strangely contends, again in an attempt to misdirect the Court's attention and somehow lend credence to its argument that it has only reached a preliminary conclusion, that it has recently informed counsel that it could make a Wells submission, and cites to the e-mail exchange discussed above in support (SEC's Mem. at 14); but nowhere in the SEC's email is such an offer mentioned.  (SEC Ex. 15.)  Counsel was invited to make one Wells submission – that was immediately after the Wells notice was issued almost a year ago.  (Glaser Decl. ¶ 16.)  The SEC cannot seriously contend that during, or any time after, the July 23, 2014 conversation that it invited counsel to make another Wells submission.  Not only was that offer never made, it would have been entirely inconsistent with the representations made, namely, that a <u>final</u> decision to charge had been reached.[6]

    The SEC's argument that its investigative purpose survives because the Commission, rather than its staff, has not made any charging decision rests on a meaningless distinction between the staff's recommendation and the Commission's authorization; this argument elevates form over substance.  Where, as here, the staff has notified counsel that it will imminently institute an administrative proceeding against Mr. Stilwell, and even asked counsel whether it was prepared to accept service, the staff implicitly recognized that obtaining the Commission's authorization would be a mere formality.  To the extent that the staff is seriously resting its

---

[6]    The SEC also contends that a final decision has not been made because Mr. Stilwell is free to tender his own settlement offer to the Commission.  (SEC's Mem. at 14.)  As the SEC well knows, this is a disingenuous argument.  The likelihood that the Commission will accept a settlement offer unsupported by its staff is nil.

argument on this distinction, we respectfully request an evidentiary hearing to determine whether the staff has any doubt that the Commission will follow its recommendation. As the staff well knows, "[t]he commissioners will vote on the recommendation, and assuming it is approved (as the vast majority are), the staff will file the action shortly thereafter." John H. Sturc, Jonathan C. Dickey, Barry R. Goldsmith, Mark K. Schonfeld & Marc J. Fagel, SEC Investigations and Enforcement Actions, in Securities Litigation: A Practitioner's Guide, 15-1, 15-12 (Jonathan C. Dickey ed., 2013); see also 1 Clifford J. Alexander & Arthur C. Delibert, Money Manager's Compliance Guide, ¶1020 (2013), available at 2005 WL 4919003. Under these circumstances, the Commission's authorization of an action is purely ministerial and provides no support for the staff/Commission distinction.[7]

The SEC's other arguments are similarly unavailing as they do not address the fact that the SEC no longer has investigatory power in this matter. Specifically, the SEC cites several cases for the proposition that an agency's jurisdiction to investigate does not expire upon the issuance of a Wells notice or the filing of charges. (SEC's Mem. at 15-17.) As a general matter, this is true. But the SEC fails to articulate why taking Mr. Stilwell's testimony would further this investigation – just because it is possible in some cases for an investigation to continue post-charge does not mean it is proper in this case. On the contrary, for the reasons already discussed, here, it is improper – given the SEC's representations it is difficult to fathom how Mr. Stilwell's testimony could possibly change the conclusions it has already drawn. In fact, based on Mr. Stilwell's first day of testimony, during which he was asked almost 100 leading questions (Glaser Decl. ¶ 10) – suggesting that the SEC was simply seeking to confirm a pre-ordained

---

[7]   The SEC slips in its brief and reveals its knowledge that this is a distinction without a difference. While discussing the settlement process, it says that counsel met with "the staff to discuss the Commission's legal and evidentiary positions." (SEC Mem. at 17.)

conclusion rather than ascertain the truth – one can only imagine what the transcript of any further "investigative" testimony will look like.

Furthermore, the cases the SEC cites for the proposition that it retains investigatory power are inapposite. The SEC's heavy reliance on the unpublished <u>Sears</u> case is misplaced. As the SEC itself notes, the Magistrate Judge in <u>Sears</u> observed that:

> Even when no Wells submission is made in response to the Wells notice, the agency may thereafter [i.e., following a Wells notice] learn of <u>additional facts</u> that warrant investigation, or seek additional documents or testimony to confirm its preliminary understanding of the facts or to clarify any <u>lingering confusion</u>.

<u>SEC v. Sears</u>, No. 05-728-JE, 2005 U.S. Dist. LEXIS 44854, 4-5 (D. Or. July 28, 2005) (emphasis added).

Here, the SEC has identified no "additional facts" of which it learned after notifying counsel on July 23, 2014 of its intended charges, the timing of those charges, and inquiring about service of an OIP. Neither has the SEC evinced any "lingering confusion" about any material facts – rather, the SEC has made it clear that it harbors <u>no</u> confusion as to its belief that the facts merit an enforcement action. In addition, <u>Sears</u> addresses whether the SEC may continue to investigate following a Wells notice – a much earlier step in the process which is not the posture in this case. Based on the SEC's July 23 communications, the SEC's conclusions and views about this case are far from "preliminary."[8]

---

[8] The SEC points to the <u>Frowein</u> case, which deals not with an administrative proceeding before the SEC and related "investigatory" subpoena, but with a civil prosecution and a Customs Service summons. The pertinent part of the <u>Frowein</u> court's analysis, appropriately, turns on its reading of a Customs Service statute, 19 U.S.C. § 1592. <u>United States v. Frowein</u>, 727 F.2d 227, 231 (2d Cir. 1984). But Mr. Stilwell's argument in this case arises out of the investigatory authority conferred on the SEC in the securities laws; <u>Frowein</u>'s analysis of § 1592 is entirely inapposite.

*(cont'd)*

Similarly, the SEC's argument that Mr. Stilwell's testimony is "needed to assess whether his original sworn statement that no other loans existed was merely mistaken or an intentional obfuscation" (SEC's Mem. at 11) rests on a distortion of Mr. Stilwell's testimony.  The SEC took Mr. Stilwell's testimony on July 2, 2013.  (Glaser Decl. ¶ 10.)  The SEC showed Mr. Stilwell a document entitled "Stilwell Funds Intercompany Loans November 2008 to December 2012" that contained a schedule of six loans between the Stilwell Funds.  (Id., SEC's Ex. 7 at 3-4.) That document, in turn, had been produced by Stilwell in response to a December 18, 2012 subpoena that called for "[a] schedule of all loan transactions and borrowing arrangements each Stilwell Fund participated in during the Relevant Period" where "Relevant Time Period" was specifically defined as "November 1, 2008 to the present."  (Id. ¶ 9.)  When asked what the loan schedule was, Mr. Stilwell testified, "I believe this is a summary of all of the loans, interfund loans…from the beginning of our time through the present."  (Id. ¶ 9, SEC's Ex. 1 at 75-76.) The SEC now represents, on the basis of this statement, that Mr. Stilwell "acknowledged the existence of only the inter-fund loans the Commission's staff had already discovered."  (SEC's Mem. at 11.)  This mischaracterizes Mr. Stilwell's statement because, as the context makes clear, Mr. Stilwell was specifically testifying about his recollection of inter-fund loans during the

---

*(cont'd from previous page)*

The remainder of the cases on which the SEC relies are equally distinguishable.  In each of those cases – Wolf, Badian, Loyd, and Stanley Plating – the movants argued that, once the agency had commenced a civil action against them in Federal Court, the litigants should be permitted to gather evidence only via the Federal Rules of Civil Procedure. In each case, the court disagreed because, as the Badian court explained, "nothing in [the Federal Rules of Civil Procedure] prohibits an attorney from investigating an action and gathering evidence outside the Rules' discovery provisions."  (SEC's Ex. 16 at 2;  see also SEC v. F.N. Wolf & Co., 93 Civ. 0379 (LLS), 1993 U.S. Dist. LEXIS 18851, at *2 (S.D.N.Y. Dec. 14, 1993); SEC's Ex. 17 at 1-3 (SEC v. Loyd, 8:02-cv-1613-T-26EAJ (RAL) (M.D. Fla. Dec. 2, 2002), DE 71); In re Stanley Plating Co., 637 F. Supp. 71, 72 (D. Conn. 1986).  But, as noted above, Mr. Stilwell's argument has nothing to do with the Federal Rules of Civil Procedure, turning instead on the SEC's lack of authority to continue "investigating" when it has already decided to charge a violation. Indeed the very fact that, in this case, the SEC has chosen not to litigate in federal court, where both parties are guaranteed discovery, serves to further distinguish Wolf, Badian, Loyd, and Stanley Plating.  Here, unlike in those cases, the Subpoena would provide the SEC an avenue for discovery that is not available to Mr. Stilwell. That basic unfairness is one of the reasons that the SEC's Subpoena is not allowable.

specified subpoena period from November 2008 to December 2012 and was responding to the
questions asked.  (Glaser Decl. ¶ 11.)

The SEC also misconstrues another portion of Mr. Stilwell's testimony when it asserts
that "when asked, Stilwell disclaimed knowledge of any other inter-fund <u>loans</u> or transfers."
(SEC's Mem. at 11.) (emphasis added).  During Mr. Stilwell's testimony, the SEC asked Mr.
Stilwell if he made any <u>transfers</u> between the Stilwell Funds:

> Q. Did you ever from time to time transfer funds between – transfer money between the
> accounts of the different funds, even for a short period of time?
>
> A. Not that I recall.  I mean, I just don't see what the point would be even.

(Glaser Decl. ¶ 12, SEC's Ex. 1 at 171.)

In this exchange the SEC did not ask Mr. Stilwell if he made any <u>loans</u> between the
Stilwell Funds; the scope of the question is limited to inter-fund <u>transfers</u>.  Indeed, the context of
the question – the context of the entire investigation, for that matter – deals with certain inter-
fund loans that Mr. Stilwell has always acknowledged having executed.  Loans and transfers are
not the same (in the former there is an expectation of repayment, whereas that is not necessarily
the case with a simple transfer); that is presumably why the SEC asked the question about
transfers after having asked many loan-specific questions.  Yet, the SEC now conflates "loans"
and "transfers" to make an inferential leap from Mr. Stilwell's statement that he did not recall
ever "transfer[ing] money between the accounts of different funds" to its erroneous assertion that
Mr. Stilwell testified that there were no other loans between the Funds other than those identified
in the loan schedule prepared in accordance with the date range set forth by the SEC.  If the
SEC's interpretation of this statement were correct, then Mr. Stilwell would have made the

nonsensical assertion that he recalled making no loans between funds, in the midst of discussing

such loans in detail over the course of a full day's testimony.  Such an interpretation is absurd.

Moreover, the very next exchange between the SEC and Mr. Stilwell – not mentioned in

the SEC's brief – makes it clear that Mr. Stilwell was focusing on transactions that had occurred

since November 2008, consistent with the document that the SEC just had shown to him:

>    Q.  Looking back –

>    A.  This is from 2008.

(Id. ¶ 13.)

On both occasions, the SEC did not ask Mr. Stilwell about pre-2008 inter-fund loans.  On

the first, the SEC's question was limited to loans within the subpoena period, and on the second,

the SEC only asked about transfers.  Mr. Stilwell provided full and accurate responses to the

questions he was asked; his testimony was neither mistaken nor an intentional obfuscation.  If the

SEC sought information about the potential existence of pre-2008 loans, it should have asked

Mr. Stilwell about that topic.  Mr. Stilwell had no reason, and certainly no obligation, to

volunteer information that he was not asked for, and that he certainly (and reasonably) did not

understand was being asked for.  The SEC's attempt to create a misrepresentation where there

was none, due to its own poor questioning and subsequent embarrassment for not asking such a

simple question, hardly serves as basis for a legitimate investigatory purpose.

## II.     The Subpoena Serves the Improper Purpose of Allowing the SEC to Circumvent the Discovery Rules that Apply in Administrative Proceedings and Obtain Evidence that Would Otherwise be Unavailable.

The SEC has failed to carry its burden of demonstrating that the Subpoena for Mr.

Stilwell's testimony serves a legitimate investigative purpose.  But even if the SEC could

establish that the Subpoena is prima facie valid under the <u>Powell</u> analysis, the Court should not

enforce a subpoena if the subpoena is "unreasonabl[e] or was issued in bad faith or for an

improper purpose or that compliance would be unnecessarily burdensome."  <u>RNR Enters.</u>, 122

F.3d at 97 (quoting <u>SEC v. Brigadoon Scotch Distrib. Co.</u>, 480 F.2d 1047, 1056 (2d Cir. 1973))

(internal quotation marks and emphasis omitted); <u>see also</u>, <u>United States v. Powell</u>, 379 U.S. 48,

57-58 (1964) (an administrative subpoena may be quashed if it is used to harass or pressure a

settlement or "for any other purpose reflecting on the good faith of the particular investigation.").

Forcing Mr. Stilwell to comply with the Subpoena would serve a purely improper

purpose: the SEC would obtain evidence relevant to the administrative proceedings to which it

would otherwise not be entitled and circumvent the Commission's own Rules of Practice that

limit the scope of discovery in administrative proceedings.  The law is settled in this circuit that

investigative subpoenas may not be used for the improper purpose of conducting discovery in

preparation for trial.  <u>See</u> <u>Payden v. United States</u> (In re Grand Jury Subpoena Duces Tecum

Dated Jan. 2, 1985 (Simels)), 767 F.2d 26, 29 (2d Cir. 1985) ("'[I]t is improper to utilize a Grand

Jury for the sole or dominating purpose of preparing an already pending indictment for trial.'")

(quoting <u>United States v. Dardi</u>, 330 F.2d 316, 336 (2d Cir.), <u>cert. denied</u>, 379 U.S. 845 (1964)).

Whereas the SEC may use its investigative power to determine potential violations of the

securities laws, it cannot use its subpoena power as a discovery tool to gather evidence in

preparation for litigation once it has made a decision to charge.  The SEC's Enforcement Manual

mandates: "staff should not use investigative subpoenas solely to conduct discovery with respect

to claims alleged in the pending complaint.  A court might conclude that the use of investigative

subpoenas to conduct discovery is a misuse of the SEC's investigative powers and circumvents

the court's authority and the limits on discovery in the Federal Rules of Civil Procedure."  <u>SEC</u>

19

Enforcement Manual at 39.  Since the SEC has already made its decision to charge Mr. Stilwell and specified the particular statutory provisions it will allege have been violated, the SEC's real purpose behind the Subpoena is to obtain discovery in preparation for litigation, which is impermissible.

The SEC's attempt to take Mr. Stilwell's testimony now, after making a charging decision but prior to commencing an administrative proceeding, is particularly unfair given that it would be unable to obtain this testimony once it begins litigating in an administrative proceeding.  First, enforcing the Subpoena would provide the SEC with a one-sided discovery tool to which it would not be entitled in an administrative proceeding.  Under Rule 233, depositions are not allowed for discovery purposes, but may only be used to preserve testimony of prospective witnesses unable to attend the hearing.  17 C.F.R. § 201.233(a) and (b).  The SEC will be unable to invoke this exception.

Second, the SEC appears to be gaming the timing of initiating the administrative proceeding.  By delaying doing so until just after Mr. Stilwell testifies, it avoids the additional restrictions that apply to investigative subpoenas issued once the parties are litigating in an administrative proceeding.  In that context, continuing investigations are subject to Rule 230(g), which requires the hearing office to "order such steps as [are] necessary and appropriate" to assure that the subpoenas are not issued "for the purpose of obtaining evidence relevant to the proceedings."  17 C.F.R. § 201.230(g).  As already observed, there is no assurance that the SEC will not try to completely revisit all of the many questions and topics that it previously covered

during Mr. Stilwell's exhaustive testimony in July 2013.[9]  This is not a permissible use of the investigative process.

Third, the SEC secures an unfair advantage by choosing a forum in which depositions are not permitted, but then circumvents that stricture by taking Mr. Stilwell's testimony in an "investigative" setting where the Federal Rules of Evidence do not apply, and counsel for Mr. Stilwell cannot object and has very limited ability to pose its own questions.

We respectfully submit that this conduct should not be countenanced by the Court, and that the SEC's motion should be denied.

## III.     The SEC's Request For an In Camera Review of Evidence Should be Denied.

The SEC's request that the Court review *in camera* the "new evidence" that it claims it obtained regarding the inter-fund loans, and which supposedly buttresses its need to take Mr. Stilwell's testimony, should be denied.  We respectfully submit that any such evidence should be made available to Mr. Stilwell's counsel.  In the course of settlement discussions, counsel for Mr. Stilwell was disturbed to learn that the SEC had misstated the testimony of a third-party witness; counsel for that third-party witness confirmed that the witness's testimony was not only inconsistent with the SEC's representation, but was actually favorable to Mr. Stilwell.  Under these circumstances, we are concerned about the SEC making similar misstatements *in camera*, and by the time it becomes clear that the SEC made such statements it will be too late – Mr.

---

[9]     To the extent that the SEC's intended questioning would attempt to rehash the many topics already addressed during Mr. Stilwell's July 2013 testimony, the Subpoena plainly does not meet the third prong of the Powell test, i.e., that "the information sought is not already within the Commissioner's possession."  RNR Enters., 122 F.3d at 96; see, e.g., United States v. Alpha Med. Mgmt., Inc., No. 96-5825, 1997 U.S. App. LEXIS 16209, at *2 (6th Cir. June 26, 1997) (unpublished) (limiting scope of summons to records not already in possession of IRS).

Stilwell will already have testified and will have no recourse.  Moreover, given the imminence of an administrative proceeding, during which the SEC will be required to disclose its entire investigatory file under Rule 230(a) of the SEC's Rules of Practice, 17 C.F.R. § 201.230(a), there is no basis for an *in camera* review of the additional evidence the SEC has purportedly adduced; it will inevitably be disclosed to Mr. Stilwell, and in relatively short order.

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. Stilwell respectfully requests that the Court deny the Commission's Application for an Order to Show Cause and for an Order Requiring Joseph D. Stilwell's Compliance with its Subpoena.

Dated: August 25, 2014
New York, NY

By: _____
    Steve R. Glaser
    Katie Rasor
    SKADDEN, ARPS, SLATE, MEAGHER
     & FLOM LLP
    Four Times Square
    New York, NY 10036
    (212) 735-3000
    Steven.Glaser@skadden.com

By: _____
    Peter D. Hardy
    POST & SCHELL, P.C.
    Four Penn Center
    1600 John F. Kennedy Blvd.
    Philadelphia, PA 19103
    (215) 587-1000
    PHardy@postschell.com

*Counsel for Respondent Joseph Stilwell*